# UNITED STATES DISTRICT COURT
## for the District of Columbia

Civil Division

William P D Cade and the National Farmers Union )
)
*Petitioners* )
)
-v- )
)
US ENVIRONMENTAL PROTECTION AGENCY, )
Michael E Regan, Administrator )
)
*Respondent.* )
)
)

Case: 1:23-cv-00650 JURY DEMAND
Assigned To : McFadden, Trevor N.
Assign. Date : 3/6/2023
Description: Pro Se Gen. Civ. (F-DECK)

Jury Trial: *(check one)*   ☒ Yes   ☐ No

## A PETITION FOR A WRIT OF MANDAMUS COMPELLING THE EPA TO ENFORCE THE CLEAN AIR ACT

**I.  The Parties to This Complaint**

   **A.  The Petitioners**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

|   |   |
|---|---|
| Name | William P D Cade |
| Street Address | 3642 N Springfield Ave. |
| City and County | Chicago, Cook |
| State and Zip Code | Illinois, 60618-4029 |
| Telephone Number | 773-562-3377 |
| E-mail Address | willie@graceful.solutions |
| Name | National Farmers Union – Aaron Shier |
| Street Address | 20 F Street NW, Suite 300 |
| City and County | Washington, DC |
| State and Zip Code | DC 20001 |
| Telephone Number | 202-554-1600 |
| E-mail Address | ashier@nfudc.org |

RECEIVED
Mail Room
MAR - 6 2023
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

**B.     The Defendants**

|  |  |
|---|---|
| Name | US ENVIRONMENTAL PROTECTION AGENCY |
| Street Address | 1200 Pennsylvania Avenue, NW Mail Code: 8101R |
| City and County | Washington, DC |
| State and Zip Code | DC 20460 |
| Telephone Number | (202) 564-4700 |
| E-mail Address | Regan.Michael@epa.gov |

|  |  |
|---|---|
| Name | Michael S. Regan |
| Street Address | 1200 Pennsylvania Avenue, NW Mail Code: 8101R |
| City and County | Washington, DC |
| State and Zip Code | DC 20460 |
| Telephone Number | (202) 564-4700 |
| E-mail Address | Regan.Michael@epa.gov |

## II.     Basis for Jurisdiction

What is the basis for federal court jurisdiction?
      ☒ Federal question        ☐ Diversity of citizenship

## III.    Statement of Claim

To the Honorable Court:

I, the undersigned, respectfully petition this Honorable Court for a writ of mandamus compelling the United States Environmental Protection Agency ("EPA") to enforce the consumer protection provisions within the Clean Air Act ("CAA")[1] as it pertains to the provision of electronic emission control systems currently withheld by certain manufacturers but required to be available to individuals, independent, or third-parties engaged in the repair, servicing, or diagnosing of motor vehicles or motor vehicle engines used in agriculture, construction, and forestry.

Under the CAA, the EPA is required to ensure that manufacturers provide promptly to any person engaged in the repairing or servicing of motor vehicles or motor vehicle engines with <u>any and all</u> information needed to make use of the emission control diagnostics system and such other information including instructions for making emission-related diagnosis and repairs[2]. Furthermore, no such information may be withheld if it is provided by the manufacturer to franchised dealers or other persons engaged in the repair, diagnosing, or servicing of motor vehicles or motor vehicle engines.[3] The CAA also explicitly prohibits any manufacturer from failing to make such information available.[4]

EPA regulations require manufacturers to "State clearly in your written maintenance instructions that a repair

---

[1] 42 U.S.C. §7401 et seq.
[2] 42 U.S.C. §7521 (m) (5) - Emission standards for new motor vehicles or new motor vehicle engines
[3] 42 U.S.C. § 7522 (a) (2) (D) Prohibited acts, Enumerated prohibitions.
[4] ibid

shop or person of the owner's choosing may maintain, replace, or repair emission control devices and systems.[5] Nevertheless, this required text is only sometimes provided by manufacturers, see Exhibit A, often deep into the document. The CAA requires this language be printed on the first page, in bold face type, of a manufacturer's manuals, yet no manuals of any type were found to meet this requirement.[6] This noncompliance significantly contributes to the publics misunderstanding of the CAA's requirements that <u>any and all</u> such information must be promptly provided. Therefore, public statements by manufacturers suggesting that the EPA prohibits repair of emission systems by third parties and individuals goes unchallenged in a wide range of public discourse such as legislative hearings. For the past 5 years manufacturers have repeatedly made false and misleading claims that the EPA prohibits owners and third-party repair providers from making emission equipment repairs, thus reinforcing, and contributing to the current monopoly for these types of repairs.

On October 26th I and another colleague met in person with Mr. Rodney Snyder, Senior Advisor for Agriculture, Office of the Administrator, EPA, in his Washington, DC, office along with Mr. Byron Bunker, Director Compliance Division, Office of Transportation and Air Quality, EPA, who joined virtually, where we discussed, in part, public statements by a manufacturer about EPA prohibiting third party and equipment owner's repair of engine emission systems. I witnessed during that October meeting Mr. Bunker reporting that he had spoken with representatives of an agricultural equipment manufacturer and stated he had asked them to cease making such statements, specifically, that the EPA prohibits emission vehicle system repairs by individuals and third parties. That manufacturer continues to this day to make such false claims publicly, notwithstanding the admonition of Mr. Bunker who is an integral part of the approval process of annual nonroad compression ignition vehicle and engine certifications for that manufacturer and others.

EPA engine certification regulations require manufacturers to comply fully with the provisions of the CAA and

---

[5] 40 CFR § 1039.125 (f)
[6] 42 USC §7541 (c) (3) (A) "The manufacturer shall provide in boldface type on the first page of the written maintenance instructions notice that maintenance, replacement, or repair of the emission control devices and systems may be performed by any automotive repair establishment or individual . . ."

has very clearly stated how such compliance must be achieved, demonstrated, and maintained. Manufacturers "Unconditionally certify that all the engines in the engine family comply with the requirements of this part, other referenced parts of the CFR, and the Clean Air Act."[7] By knowingly allowing manufacturers to withhold the engines emission system parts, software tools, and documentation required by the CAA the EPA fails to implement the consumer protection provisions for engine emission system repairs and maintenance enacted by Congress specifically to prevent restrictions on consumer choice and market competition by manufacturers of agricultural, construction, and forestry equipment allowing manufacturers to monopolize repair of electronically controlled equipment thus violating the Sherman Act. Fairmark Partners, LLP has submitted a complaint to the Federal Trade Commission (FTC) that further details a manufacturer's, John Deere & Company's, actions that prevent farmers and ranchers from getting any and all information needed to repair their own equipment or obtaining diagnostic software and other information necessary to repair their equipment.[8]

To date, the EPA has promulgated regulations for highway, stationary, and nonroad vehicle engine emission systems that require manufacturers to provide emission-related installation and maintenance instructions.[9] John Deere acknowledges their legal responsibility under 40 CFR 1068.101 (b) in a letter to Chair, Lina Kahn, of the Federal Trade Commission, dated 21-July 2021, see Exhibit B, page 2, the first full paragraph titled "Clean Air Act Emission Controls." The letter cites its exemption and a legal theory that is apparently accepted by the EPA. John Deere cites in this letter that paragraph (1) of the regulation, 40 CFR 1068.101 (b), titled tampering, as a justification for its actions but their argument inappropriately conflates repair and tampering.

Since 2015 the librarian of congress has consistently ruled that repair of agricultural equipment is not an infringing activity and adopted the following rule:[10]

> Accordingly, based on the Register's recommendation, the Librarian adopts the following

---

[7] 40 CFR §1039.205 (w) What must I include in my application?
[8] https://farmaction.us/wp-content/uploads/2022/03/Deere-Right-To-Repair-FTC-Complaint.pdf
[9] 40 CFR §1068 - GENERAL COMPLIANCE PROVISIONS FOR HIGHWAY, STATIONARY, AND NONROAD PROGRAMS, Authority: 42 U.S.C. 7401-7671q., Source: 73 FR 59344, Oct. 8, 2008, unless otherwise noted
[10] https://www.copyright.gov/1201/2015/,

exemption:

> Computer programs that are contained in and control the functioning of a motorized land vehicle such as a personal automobile, commercial motor vehicle or mechanized agricultural vehicle, except for computer programs primarily designed for the control of telematics or entertainment systems for such vehicle, when circumvention is a necessary step undertaken by the authorized owner of the vehicle to allow the diagnosis, repair or lawful modification of a vehicle function; and where such circumvention does not constitute a violation of applicable law, including without limitation regulations promulgated by the Department of Transportation or the Environmental Protection Agency; and provided, however, that such circumvention is initiated no earlier than 12 months after the effective date of this regulation.[11]

EPA opposed this rule in its letter of 17-July-2015 to the United States Copyright Office.[12] Nevertheless, this rule was adopted and has been reaffirmed during each subsequent triennial Digital Millennium Copyright Act, 1201, public review, comment, and rulemaking. John Deere in their letter to Chair Kahn, and subsequently reused as Exhibit B in a Securities and Exchange Filing, a 14a-8-no-action letter[13] inappropriately ignores their legal obligation of the 6th paragraph of 40 CFR 1068.101 (b), that in part states: "You must also provide emission-related installation and maintenance instructions."

Furthermore, some manufacturers are known to ignore 40 CFR 1068.110 (c) when owners make warranty claims for emission system repairs and maintenance services to manufacturer for all expenses related to diagnosing and repairing or replacing emission-related parts for independent service providers.

Unfortunately, the EPA's lack of enforcement and regulatory oversight for CAA compliance allows some manufacturers of agricultural, construction, and forestry equipment to deliberately withhold and refuse to

---

[11] https://www.copyright.gov/fedreg/2015/80fr65944.pdf
[12] https://copyright.gov/1201/2015/USCO-letters/EPA_Letter_to_USCO_re_1201.pdf
[13] https://www.sec.gov/divisions/corpfin/cf-noaction/14a-8/2021/greencenturydeere111221-14a8.pdf

provide to vehicle owners or third availableparties <u>any and all</u> emission system repair tools, software, and information on par with installation and maintenance instructions provided to franchise dealers. As a result of this withholding manufacturers effectively restrict these repairs by equipment owners and third parties. Other equipment owners have been granted some "dealer level" information, but this is done in an inconsistent and preferential manner yet can even be limited in such cases. The various limits are established during the installation of the software. However, to date, the EPA, clearly aware of at least some of these CAA violations has never given notice to the manufacturers or pursued enforcement to obtain uniform consistent and non-preferential access to <u>any and all</u> repair tools and related information, instead the complete capability is only provided to franchise dealers.

The physical and electronic control of emissions in agricultural, construction, and forestry equipment is virtually identical to that of other types of motor vehicles and engines, such as emission systems used in compression ignition highway vehicles. <u>Any and all</u> repair tools, software, and information have been available safely and securely for nearly a decade by cost-effective, reliable, and profitable industry cooperation such as Mitchell1's TruckSeries repair information[14]. Therefore, there is no valid reason, such as safety, cybersecurity, intellectual property rights, etc. for manufacturers to withhold <u>any and all</u> information from those engaged in the repair, servicing, or diagnosing of agricultural, construction, and forestry equipment.

Additionally, EPA regulations explicitly state manufacturers must apply good engineering judgement,[15]

> "You must use good engineering judgment for decisions related to any requirements under this chapter. This includes your applications for certification, any testing you do to show that your certification, production-line, and in-use engines/equipment comply with requirements that apply to them, and how you select, categorize, determine, and apply these requirements."

---

[14] https://mitchell1.com/truckseries/
[15] 40 CFR §1068.5 (a) How must manufacturers apply good engineering judgement?

The EPA has the authority to assess civil penalties upon manufacturers of up to $44,539 for each engine or piece of equipment in violation of the CAA. Additionally, the EPA may "deny your application or suspend or revoke a certificate of conformity if . . . (7) [Manufacturers] take any action that otherwise circumvents the intent of the Act or this part."

**A Prayer for Relief**

I respectfully request that this Honorable Court issue a writ of mandamus compelling the EPA to take action to ensure that manufacturers of agricultural, construction, and forestry equipment are complying with the requirements of the CAA and EPA's regulations and require any and all violators take immediate corrective action. Additionally, that the court direct the EPA to explicitly require and validate that manufacturers promptly provide <u>any and all</u> emission-related information to individuals engaged in the repair, servicing, or diagnosing of agricultural, construction, and forestry equipment or engines, each year before an engine family can be certified and for all previous engine family certifications that have been granted in the past 10 years. Finally, I ask the court to impose a requirement that the senior most executive of a manufacturer be required to attest in writing that the manufacturer's unconditional certification of each engine family requirement is true and correct.

Respectfully submitted, and attested, March 4th, 2023

William P D Cade